# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY BLOUNT,<br><br>    Plaintiff<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>    Defendant | CASE NO. 1:19-CV-0578 AWI SAB<br><br>ORDER ON PLAINTIFF'S RULE 42(a) MOTION TO CONSOLIDATE<br><br>(Doc. No. 46) |
| SHIRLEY BAILEY,<br><br>    Plaintiffs<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>    Defendant | CASE NO. 1:19-CV-0583 AWI SAB<br><br>ORDER ON PLAINTIFF'S RULE 42(a) MOTION TO CONSOLIDATE<br><br>(Doc. No. 50) |
| JOHN SNAVELY as successor in interest of the Estate of Roma Snavely,<br><br>    Plaintiff<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>    Defendant | CASE NO. 1:19-CV-0585 AWI SAB<br><br>ORDER ON PLAINTIFF'S RULE 42(a) MOTION TO CONSOLIDATE<br><br>(Doc. No. 63) |
| JOSEPHINE NIETO and VINCENTE NIETO,<br><br>    Plaintiffs<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION<br><br>    Defendant | CASE NO. 1:19-CV-0588 AWI SAB<br><br>ORDER ON PLAINTIFF'S RULE 42(a) MOTION TO CONSOLIDATE<br><br>(Doc. No. 53) |

These are separate products liability cases brought by Plaintiffs Misty Blount, Shirley Bailey, John Snavely (as successor to Roma Snavely), and Josephine and Vincente Nieto (collectively "Plaintiffs") against Defendant Boston Scientific Corporation ("Boston"). These cases are part of a group of eleven cases that were transferred to this Court from the Southern District of West Virginia as part of a Multi-District Litigation ("MDL") proceeding involving transvaginal mesh implants manufactured by Boston. All eleven cases have been related pursuant to Local Rule 123. Currently before the Court is Plaintiffs' Rule 42(a) motion to consolidate these four cases. For the reasons that follow, Plaintiffs' motion to consolidate will be granted.

## **PARTIES' ARGUMENTS**

*Plaintiffs*

Plaintiffs argue that consolidation is appropriate. Each Plaintiff was implanted with a Lynx Suprapubic Mid-Urethral Sling System ("Lynx") transvaginal mesh manufactured by Boston in order to address stress urinary incontinence. Each Plaintiff experienced similar complications from the Lynx and each are bringing eleven causes of action under California law.[1] Each of these cases share a number of expert witnesses, for both Plaintiffs and Boston, and consolidation would permit the parties to call that expert only once, thus avoiding duplicative testimony and promoting efficiency. If these cases are not consolidated, substantial duplication of labor and use of judicial resources will occur. Witnesses will have to appear in separate trials, there would be the possibility of inconsistent factual and legal determinations, and multiple juries will have been empaneled, all to hear overlapping testimony and actions regarding the same medical device. Further, the risk of jury confusion and prejudice can be sufficiently reduced through jury instructions. Although Boston will argue that there is a risk of jury confusion and undue prejudice if the cases are ordered consolidated, the Fourth Circuit and the Eleventh Circuit have both approved the consolidation of cases involving transvaginal mesh manufactured by Boston. In *Eghnayem* and *Campbell*, the courts found no prejudice to Boston and affirmed consolidation.

---

[1] All female Plaintiffs are pursuing claims of: (1) negligence, (2) strict liability design defect; (3) strict liability manufacturing defect; (4) strict liability failure to warn; (5) breach of express warranty; (6) breach of implied warranty; (7) fraudulent concealment; (8) negligent misrepresentation; (9) negligent infliction of emotional distress; (10) consumer protection laws; and (11) unjust enrichment. Vincente Nieto, the spouse of Josephine Nieto brings his own claims for loss of consortium.

2

1  *Defendant*

Boston argues that consolidation is improper because it will cause unfair prejudice. First, permitting consolidation of these cases will present the opportunity for a jury to infer a defect and causation because there are multiple plaintiffs, and provide plaintiffs with the opportunity to use evidence related to one plaintiff to supplement the lack of evidence related to another plaintiff. Second, the jury is likely to hear evidence that would be inadmissible in some of the cases, were they tried separately. For example, evidence regarding new information and the state of knowledge of the medical community that became available after an implant is inadmissible under Rule 407. Snavely was implanted in 2007, but Bailey was implanted in 2011. Information available before 2011 would be relevant to Bailey's case, but if the information was available only after Snavely's implantation, the evidence would be inadmissible as to Snavely. Third, there are differences between the Plaintiffs. Each Plaintiff was implanted at a different age, in different years, by different doctors, and after individual consultations with their doctors to determine the best course of treatment. The Plaintiffs had dissimilar medical histories, suffered from different concurrent problems unrelated to the Lynx, and suffered different injuries. Moreover, the time periods between manifestations of problems differ between the Plaintiffs and each Plaintiff had different post-implant treatments. The factual differences between the cases could mean that a product is defective in one case but not the other. Also, application of the learned intermediary doctrine and the state of the art defense could affect the duty to warn that was owed to each Plaintiff. All of these factors may affect the existence of a defect in a particular case. The individual issues associated with each Plaintiff predominates over any common issues, and, when combined with the fact that the existence of a defect could vary from Plaintiff to Plaintiff, a jury could be confused and overwhelmed with the amount of technical information and seemingly inconsistent results. Thus, there is a substantial danger of jury confusion and prejudice

**LEGAL STANDARD**

Federal Rule of Civil Procedure 42(a) provides: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at

issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." A district court has broad discretion to determine whether and to what extent consolidation is appropriate. See Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 855-56 (9th Cir. 2016); Investors Research Co. v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 877 F.2d 777, 777 (9th Cir. 1989). In deciding whether to consolidate, a court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." Huene v. United States, 743 F.2d 703, 704 (9th Cir. 1984); Single Chip Sys. Corp. v. Intermec IP Corp., 495 F.Supp.2d 1052, 1057 (S.D. Cal. 2007). Further, "the law is clear that an act of consolidation does not affect any of the substantive rights of the parties." J.G. Link & Co. v. Continental Cas. Co., 470 F.2d 1133, 1138 (9th Cir. 1972); see Hall v. Hall, 138 S.Ct. 1118, 1130 (2018) (". . . consolidation could not prejudice rights to which the parties would have been due had consolidation never occurred."). While considerations of prejudice to a party or the likelihood of jury confusion can be sufficient to deny consolidation, courts should consider whether the risks of prejudice and jury confusion "can be alleviated by utilizing cautionary [jury] instructions" and "controlling the manner in which [the parties' claims and defenses] are submitted to the jury for deliberation." Eghnayem v. Boston Scientific Corp., 873 F.3d 1304, 1313-14 (11th Cir. 2017); see Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990). Typically, consolidation is a favored procedure. In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig., 282 F.R.D. 486, 491 (C.D. Cal. 2012); see also Eghnayem, 873 F.3d at 1314.

**DISCUSSION**

<u>1.</u>     <u>Common Questions of Law or Fact</u>

There is really no dispute that the four cases share common questions of law and fact. In each of the four cases, the Plaintiffs are pursuing the same basic causes of action based on personal injuries that were allegedly caused by the same product – the Lynx. The Plaintiffs each contend that the Lynx is defective in design, manufacture, and warning, and they each seek to recover compensatory damages through the same California law theories (generally negligence, strict products liability, breach of warranty, and misrepresentation). Further, each plaintiff was

implanted with the Lynx in California in order to treat an identical medical condition (stress urinary incontinence), and the Plaintiffs have experienced similar complications, including urinary incontinence.  These are significant and substantial common issues of law and fact.  Cf. Campbell v. Boston Scientific Corp., 882 F.3d 70, 74 (11th Cir. 2018) (finding that four consolidated transvaginal mesh cases shared "many common quests of law and fact" where each plaintiff experienced similar complications from an implanted Obtryx, each were diagnosed with/being treated for stress urinary incontinence, each received the Lynx implant in West Virginia, and each asserted the same products liability theories under West Virginia law); Eghnayem, 873 F.3d at 1312, 1314 (finding that four consolidated transvaginal mesh cases shared common issues of law and fact where each plaintiff was implanted with the same mesh device and each pursued products liability claims under Florida law). Because the four cases share common questions of law and fact, consolidation is possible by the express terms of Rule 42(a).  See Fed. R. Civ. P. 42(a); Campbell, 882 F.3d at 74; Eghnayem, 873 F.3d at 1314.

 2. Propriety of Consolidation

Consolidation of these four cases is highly desirable.  As Plaintiffs point out, the burden on some witnesses will be reduced, repetition of testimony can be avoided, only a single jury will need to be called, the claims of three other Plaintiffs will be resolved more quickly, the possibility of inconsistent findings is reduced, and the Court will only need to devote time and resources to one trial.  It is well known that the Eastern District of California has a significantly overburdened docket and is in need of additional judges.  Having four separate trials would have a greater impact on the Court's trial calendar than a single trial.  In short, the strain of one consolidated trial is substantially less on the community, the witnesses, the parties, the attorneys, and the Court than four separate trials.  The efficiency and desirability of consolidation in this situation is great.

In terms of inconvenience, delay, or expense that may be caused by consolidation, Boston has not argued that any of these considerations bear on the consolidation determination.  Although this Court has permitted limited additional discovery, the four cases at bar have arrived following significant pre-trial and discovery proceedings through the MDL process.  They are in a relatively advanced state of readiness.  The Court cannot find that there is a significant risk of delay,

5

inconvenience, or expense from consolidation. In fact, the contrary is true. Because the Plaintiffs are making the same claims involving the Lynx, and because of the cross-over of the expert witnesses, separate trials would be largely repetitive, and thus implicates "the burdens, delays, and expense that . . . help justify consolidation." Campbell, 882 F.3d at 74.

Boston does make other arguments against consolidation. With respect to the number of Plaintiffs possibly affecting fairness, the Court finds this argument to be speculative. Instead of one Plaintiff, Boston will be dealing with four Plaintiffs. Four is not a large number.[2] Moreover, it is entirely possible to instruct the jury to treat each case separately. In both *Campbell* and *Eghnayem*, the two district courts had each consolidated four cases into one. In both cases, the appellate court found that jury instructions had sufficiently alleviated the potential prejudice of "multiple plaintiffs." See Campbell, 882 F.3d at 74-75 (noting that the court instructed the jury "that the trial concerned four separate claims and informed them that they must treat each case as 'if each have been tried by itself,'" and that the jury was not to "even consider that more than one claim was brought."); Eghnayem, 873 F.3d at 1314-15 (noting that the jury was instructed about the "consolidated nature of the trial . . . and expressly instructed it to consider each plaintiff's claims separately."). Therefore, the Court concludes that there is no significant risk of prejudice simply because Boston will have to defend itself against four plaintiffs. See Campbell, 882 F.3d at 74-75; Eghnayem, 873 F.3d at 1314.

In terms of inadmissible evidence, Boston indicates that Federal Rule of Evidence 407 would bar some evidence against some of the Plaintiffs because the evidence became available after the implantation of some Plaintiffs, but before the implantation of others. The Court finds Boston's argument to be speculative and unpersuasive. First, contrary to Boston's characterization of Federal Rule of Evidence 407, not all "subsequent remedial measures" are inadmissible. Rather, by the express terms of Rule 407, subsequent remedial measures are only inadmissible to prove negligence, culpable conduct, a defect, or the need for a warning. See Fed. R. Evid. 407. If there is another purpose for the evidence, Rule 407 does not preclude admission.

---

[2] The Court notes that multiple plaintiffs are not uncommon in federal court, particularly in 42 U.S.C. § 1983 litigation.

Cf. Campbell, 882 F.3d at 75 (finding that it was "not clear" that evidence occurring after implantation was not necessarily inadmissible); Eghnayem, 873 F.3d at 1315-17 (same). Second, Boston does not actually identify any evidence that was available before one Plaintiff's surgery, but after another's. Nor does Boston actually assert or explain how the "state of the art" was different as between the four Plaintiffs. Boston is merely suggesting that there *may* be differences. Without an express assertion that different (and relevant) information existed as between the Plaintiffs, or an express assertion (and explanation of how) the "state of the art" changed as between the Plaintiffs, Boston is advancing a mere hypothetical. Finally, "when evidence is relevant for some purposes and not others, limiting instructions – not exclusion – are generally the best way to handle the issue." Eghnayem, 873 F.3d at 1316-17. It is unclear why limiting instructions would not cure any admissibility issues.

Finally, with respect to individual issues predominating over common questions, some courts have denied consolidation for this reason. E.g. Banacki v. OneWest Bank, FSB, 276 F.R.D. 567, 572 (E.D. Mich. 2011). Boston has identified a number of considerations and facts that are unique to each Plaintiff. In particular, Boston stresses that the injuries suffered are not identical, and the Plaintiffs were different ages, had different post-implantation treatments, and had different medical histories. These individual considerations will certainly affect damages. However, the fact remains that there are substantial common questions shared by all Plaintiffs. The Plaintiffs all suffered injury allegedly because of the Lynx, and each are asserting the same causes of action against Boston relating to the Lynx. Further, while Boston identified various differences, including differing medical histories, it does not actually explain how those differences actually affect causation in this case. For example, simply listing different medical conditions and identifying them as "noteworthy" or "significant" does not actually show how they are significant to the issue of causation. Since these conditions were identified by medical experts, the conditions could be "significant" for medical reasons unrelated to causation. A particular condition might have raised the risk of post-surgical complications in general, but not necessarily related to the Lynx itself. Further, as *Campbell* and *Eghnayem* show, there is no reason to believe that a jury cannot keep track and individually assess how the differing situations and medical histories of

7

each Plaintiff affected their damages or causation. Given the generality of Boston's argument, as well as the significant common questions of law and fact that are present, the Court cannot hold that individual issues so predominate over common issues that jury confusion or prejudice would likely result. The Court concludes that any danger that is present can be sufficiently alleviated through jury instructions and the trial process. See Eghnayem, 873 F.3d at 1313-14 (holding *inter alia* that "generally differences in causation are not enough, standing alone, to bar consolidation of products liability claims.").

In sum, the Court concludes that the considerations raised by Boston against consolidation do not sufficiently outweigh the benefits of consolidation. Consolidations for trial is appropriate.

    3.    *Campbell* and *Eghnayem*

The arguments made by Boston in this case were essentially raised and rejected in both *Campbell* and *Eghnayem*.

In *Eghnayem*, Boston argued that "the district court abused its discretion by consolidating the plaintiffs' suits, because individual issues predominated and the consolidation yielded unacceptable prejudice." Eghnayem, 873 F.3d at 1313. The Eleventh Circuit reasoned:

> The district court did not abuse its discretion in concluding that the considerations surrounding consolidation weighed in favor of joining these suits for trial. The plaintiffs all brought the same claims based largely on the same facts: BSC's Pinnacle device was unreasonably dangerous by design, and BSC failed to include sufficient warnings with the device to alert physicians to that danger. Although each plaintiff's proof of causation was necessarily different, generally differences in causation are not enough, standing alone, to bar consolidation of products liability claims. And any danger of prejudice arising from the consolidation was reduced in this case, because the district court explained the consolidated nature of the trial to the jury and expressly instructed it to consider each plaintiff's claims separately. Notably, this is not the first time we have affirmed the consolidation of products liability claims that require individual evidence of causation. Thus, for example, in *Hendrix v. Raybestos-Manhattan, Inc.*, we affirmed a district court's decision to consolidate four products liability cases that all alleged that asbestos exposure caused them to contract an asbestos-related disease, notwithstanding the presentation of different bodies of proof on causation.
>
> BSC nonetheless contends that consolidation was improper because the plaintiffs' evidence was presented in a confusing and disjointed manner, but this argument is largely beside the point. Confusing or not, most of the evidence went toward the common claims among the plaintiffs: (1) whether the Pinnacle was a defective medical device and (2) whether the Pinnacle's warnings were sufficient. The only evidence that went to the individual claims came from the more-easily-distinguishable doctors who did each plaintiff's implantation, and concerned comparatively straightforward questions: (1) did the Pinnacle's design cause that

8

plaintiff's injuries, and (2) did the lack of sufficient warnings influence that doctor's decision to implant the Pinnacle. BSC has not shown that this individual evidence made the suit so confusing that it was obviously prejudiced and thus has failed to tie the confusion to the consolidation order.

. . . . .

BSC also says that consolidating the four plaintiffs for trial led the jury to believe that their claims were more likely to be true, but this argument fails. For starters, the district court instructed the jury that "[y]ou may not even consider the fact that there's more than one case being brought," an instruction that the jury presumably followed. And even had the cases not been consolidated, the plaintiffs would likely have been able to submit evidence of other patients with similar injuries to show the dangerous character of the Pinnacle. Moreover, consolidation of products liability cases will always implicate this concern, and this Court has affirmed consolidation in these kinds of cases before.

BSC's final argument is that, due to the differences in the plaintiffs' claims, consolidation allowed evidence into trial that would have been individually inadmissible for some of the plaintiffs. This claim fails as well. . . .

Moreover, it's far from clear that the complained-of evidence would have been excludable even if each of the plaintiffs had tried their cases alone. BSC identifies three pieces of evidence that may have been inadmissible in individual trials . . . evidence relating to BSC's practices and the Pinnacle's safety that post-dated some but not all of the plaintiffs' implantations. . . .

. . . BSC fails to show that the evidence post-dating some of the implantations — including admissions from BSC employees tending to show a pattern of insufficient research for other medical devices, and information suggesting a high erosion rate for the Pinnacle — would not be admissible for at least some purposes in each individual trial. A pattern of insufficient research might be probative evidence as to whether BSC designs products without due care, and the Pinnacle's high erosion rate is surely probative of whether BSC was strictly liable for a defective product. BSC is of course correct that this evidence could not have been used to show BSC's knowledge of the risks associated with the Pinnacle for those plaintiffs whose implantations predated the evidence. But when evidence is relevant for some purposes and not others, limiting instructions — not exclusion — are generally the best way to handle the issue. BSC's failure to request limiting instructions here dooms this argument.

Quite simply, BSC cannot establish that it was prejudiced by the consolidation of the plaintiffs' suits. The district court did not abuse its discretion in ordering the consolidation . . . .

Id. at 1314-17 (internal citations omitted).

In *Campbell*, Boston's "primary contention [was] that the trial was rendered unfair by the consolidation of four independent cases for trial." Campbell, 882 F.3d at 74. In relevant part, the Fourth Circuit reasoned:

The district court appropriately considered [the relevant factors] in ultimately ordering consolidation. It first identified the many common questions of law and fact across the trials: The four plaintiffs were each diagnosed with stress urinary incontinence before being implanted with Obtryx devices made by BSC. Each

9

plaintiff alleged that she had experienced similar complications from the Obtryx that required additional medical treatment. Each plaintiff received her Obtryx implant in West Virginia and asserted the same design-defect and failure-to-warn claims under West Virginia law. Because of these many similarities among the cases, the plaintiffs shared expert witnesses and relied on much of the same evidence from BSC documents. BSC asserted in all four cases both that the Obtryx was not defective and that the Obtryx's directions for use provided sufficient warnings. These many similarities certainly provided the "common question[s] of law or fact" required by Rule 42(a). They also make clear that separate trials would have been largely repetitive, and thus would have implicated the burdens, delays, and expense that Arnold noted help justify consolidation.

Of course, regardless of efficiency concerns, consolidation is not appropriate if it would deny a party a fair trial. Alert to this risk, the district court endeavored throughout the trial to limit any potential jury confusion or prejudice resulting from the consolidation. At the outset of trial, the district court instructed the jury that the trial concerned four separate claims and informed them that they must treat each as "as if each have been tried by itself." During the trial, BSC had the opportunity to address each plaintiff's claims independently, and in fact pursued a comparative negligence defense as to one plaintiff that it did not pursue as to the other plaintiffs. Following trial and prior to jury deliberations, the district court emphasized that the jurors were not to "even consider that more than one claim was brought" in weighing the evidence and that they must consider each case separately. To promote independent review of each case, the district court made use of special interrogatories on separate verdict forms for each plaintiff.

BSC contends that despite these protections, it was prejudiced by the admission of evidence in the consolidated trial that was admissible as to only some of the plaintiffs. It chiefly complains of evidence regarding events that took place after some of the plaintiffs had received their implants, arguing that these events were irrelevant as to those plaintiffs. But it is not clear that this evidence is irrelevant as to any of the plaintiffs. For example, e-mail chains among BSC employees in May 2009 may shed light on what BSC knew in April 2009, when one of the plaintiffs received her implant. Similarly, studies published after the women received their implants, and evidence of how BSC reacted to those studies, may be relevant both to the actual safety of the product and to BSC's general policies regarding how to handle evidence of safety risks. It may well have been within a district court's discretion to admit all of this evidence as to each of the plaintiffs even in separate trials. Indeed, BSC's objections go more to the weight of the evidence than to its admissibility. We certainly cannot say that allowing this evidence in the consolidated trial prejudiced BSC to the extent that consolidation itself was an abuse of discretion.

Further, BSC lacks evidence that the district court's safeguards were inadequate or that consolidation in fact resulted in any prejudice or jury confusion. . . . .
. . . .

Ultimately, it is clear that the district court was well within its discretion in consolidating these four cases for trial. To hold otherwise would be to sacrifice the substantial savings of time and money that consolidation offers. Both plaintiffs and defendants benefit from lessened litigation costs and the reduced need for expert testimony. Witnesses benefit from reduced demands on their time by limiting the need for them to provide repetitive testimony. The community as a whole benefits from reduced demands on its resources, including reduced demand for jurors. The judicial system benefits from the freedom consolidation affords judges to conscientiously resolve other pending cases.

Id. at 74-76 (internal citations omitted).

The Court has relied on and utilized much of *Campbell* and *Eghnayem* in its own analysis, and it now reproduces the relevant analyses from these cases as additional support for consolidation. These cases demonstrate that consolidation of transvaginal mesh cases can be done in such a way as to alleviate possible prejudice to Boston.[3]

Further, since Boston was the defendant in both cases, the Court expects counsel for Boston to meet and confer with Plaintiffs' counsel regarding the safeguards that were utilized by the district courts in *Campbell* and *Eghnayem*. While this Court may not necessarily follow a particular instruction, procedure, or safeguard, it will find such procedure or safeguard highly persuasive. If a desired safeguard that was used in *Campbell* or *Eghnayem* cannot be agreed upon between counsel, then the party advocating for such safeguard shall support a request for that safeguard with an excerpt from the relevant record in either *Campbell* or *Eghnayem*, if possible.

4. Strict Liability – Design Defect

In the motions to consolidate, each Plaintiff indicates that she is pursuing a claim for strict liability design defect. The California Supreme Court has held that "a manufacturer of prescription drugs is exempt from strict liability for defects in design . . . ." Anderson v. Owens-Corning Fiberglass Corp., 53 Cal.3d 987, 995 (1991) (describing Brown v. Superior Ct., 44 Cal.3d 1049, 1069 (1988)). California courts have extended the exemption from strict liability design defect claims to manufacturers of implanted medical devices that are available only through the services of a physician.[4] See Trejo v. Johnson & Johnson, 13 Cal.App.5th 110, 146 (2017);

---

[3] Boston argues that *Campbell* and *Eghnayem* are not controlling because they address a trial that had already occurred and "address the issue of whether prejudice *occurred in the past.* They do not consider the issue confronting the Court – whether the efficiencies possibly gained by consolidation outweigh the prejudice consolidation would cause [Boston]." The Court finds Boston's argument to be frivolous. First, the fact that trials had occurred in *Campbell* and *Eghnayem* gave Boston the opportunity to point to concrete instances of prejudice that had occurred at trial, as opposed to a mere theoretical prejudice raised pre-trial. Second, and more importantly, *Campbell* and *Eghnayem* compared the standards and considerations that a district court is required to weigh and determined that consolidation was proper. That is, these cases of necessity found that the efficiency of consolidation outweighed any risk of prejudice to Boston. Critically, the prejudice at issue in those cases is essentially the same prejudice identified by Boston in this case. To the extent that Boston's feared prejudice is legally significant, these cases show that steps can be taken to sufficiently negate or alleviate that prejudice.

[4] Although strict liability design defect claims are unavailable, litigants may still pursue negligent design defect claims. See Brown, 44 Cal.3d at 1069 n.12; Scott v. C.R. Bard, Inc., 231 Cal.App.4th 763, 772-74 (2014).

11

Garrett v. Howmedica Osteonics Corp., 214 Cal.App.4th 173, 184 (2013); Artiglio v. Superior Ct., 22 Cal.App.4th 1388, 1397 (1994); Hufft v. Horowitz, 4 Cal.App.4th 8, 19 (1992). The Lynx transvaginal mesh would seem to fit this exemption from strict liability design defect claims. If Plaintiffs believe that their claims do not fit within the strict liability design defect exemption, they should be prepared in future proceedings to explain why it does not apply. Otherwise, Plaintiffs should not represent that a claim for strict liability design defect is at issue in these cases.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motions to consolidate are GRANTED; and
2. The cases of *Blount v. Boston Scientific*, 1:19-cv-0578 AWI SAB, *Bailley v. Boston Scientific*, 1:19-cv-0583 AWI SAB, *Snavely v. Boston Scientific*, 1:19-cv-0585 AWI SAB, and *Nieto v. Boston Scientific*, 1:19-cv-0588 are CONSOLIDATED under Rule 42(a) for purposes of trial; and
3. Within seven (7) days from service of this order, the parties shall contact the Courtroom Deputy with proposed dates for a telephonic status conference, the purpose of which will be to address any further outstanding issues and to set pre-trial conference and trial dates.

IT IS SO ORDERED.

Dated: __August 21, 2019__   _____
SENIOR DISTRICT JUDGE